**SHIPP et al. v. CHEEK.**

No. 5404.

Court of Appeal of Louisiana.
Second Circuit.

April 30, 1937.

Rehearing Denied June 1, 1937.

S. R. Holstein, of Winnsboro, and Sholars & Gunby and G. Allen Kimball, all of Monroe, for appellants.

D. W. Gibson and Jesse C. McGee, both of Harrisonburg, for appellee.

DREW, Judge.

The plaintiffs, Carl Shipp, Sr., and Carl Shipp, Jr., members of the partnership of Carl Shipp & Son, bring this action to recover judgment against G. A. Cheek, defendant herein, in the sum of $1,717.26. For a cause of action plaintiffs allege they are the owners and holders of a certain promissory note executed by G. A. Cheek for the amount of $508.02, dated May 8, 1933, due and payable on January 1, 1934, to the order of Carl Shipp & Son, and for an alleged shortage of $1,209.24 in an accounting of defendant's administration as manager of plaintiffs' store at Sicily Island, La., between the dates of December 27, 1933, and August 16, 1934.

Defendant denied owing any indebtedness in any manner or amount to plaintiffs for shortage or otherwise. He admitted execution of the note sued on to cover a purported shortage in his accounts while employed in the store at Clayton, La., belonging to plaintiffs, but alleges same was given without consideration and was executed under duress and in fear of being criminally prosecuted, as had been threatened by one of the plaintiffs, Carl Shipp, Sr., in the event he refused to sign said note. Defendant also denied that he was obligated to pay losses or shortages, as shown by the inventories by plaintiffs of the stores where he had been employed together with other clerks and employees.

The lower court rendered the following written opinion:

"Plaintiffs bring this suit alleging an indebtedness due them by defendant in the sum of $1717.26. Of this amount the sum of $508.02 is evidenced by a promissory note executed by this defendant on the 8th day of May, 1933, and due and payable, without date, to the order of these plaintiffs. The balance of said indebtedness, or the sum of $1209.24, is alleged to represent a shortage in an accounting to these plaintiffs by the defendant while he was in their employ as manager of their store situated at Sicily Island, Louisiana, between the dates of December 27, 1933, and August 16, 1934.

"Defendant admits the execution of the aforesaid note, but denies any consideration being given therefor, and alleges duress and threats of criminal prosecution as further defenses thereto. He generally denies any and all liability for the aforesaid shortage in accounting.

"On trial of these issues the following are substantially the facts as revealed by the evidence:

"Plaintiff, doing business under the trade name of Carl Shipp & Son, owned and operated a general retail and merchandise business, the main or principal store being situated at Wisner, Louisiana, with a number of chain or branch stores situated at various villages and towns in the surrounding territory, and particularly, a store situated in each of the villages of Clayton and Sicily Island, Louisiana. The general or supervising management of this business was conducted from the principal store at Wisner, Louisiana, by the plaintiffs themselves. Here, all wholesale purchases were made, all surplus stock stored, all retail prices determined, fixed, and marked upon each article of merchandise before being sent out to the various branch stores, all accounts and office records being here made and kept. Each of the branch stores was in the immediate charge of an employee, termed 'manager.' It seems that this manager's duties, in addition to that of clerk, were to receive and sign for all merchandise sent out from the principal store; to requisition for additional stock when and as needed and to look after and account for all cash received from sales.

"On October 1, 1932, this defendant was employed by these plaintiffs at a salary of $50.00 per month and placed in charge of their branch store situated at Clayton, Louisiana. At the time of assuming these duties, this defendant was charged, at the home office, with the retail price value of the entire stock of merchandise in the Clayton store. The amount of this charge was determined from an inventory taken at that time. Thereafter, he was further charged with the retail price value of all merchandise added to the stock of this store as sent out from the main store.

"Against these charges, defendant was credited with all cash sales turned in by him. He was allowed a further credit of 1% of his cash sales to cover 'general waste and tear', also credit for any merchandise reported by him as consumed in the business or destroyed in transit. At the end of his employment at this store, defendant was further credited with the retail price value of all the unsold stock, as determined by an inventory taken at that time.

"On April 16, 1933, defendant was transferred to and placed in charge of plaintiffs' store in Sicily Island, Louisiana, where exactly the same system of operation and accounting was used as that in the Clayton store aforesaid.

"Throughout the period of defendant's employment, at both of said stores, not less than one additional clerk was employed and worked as his assistant. On Saturdays further additional help was engaged. At repeated intervals, special or bargain sale days were held, and on these latter occasions the plaintiffs themselves, together with additional clerks, brought in from the main store and elsewhere, were engaged. Plaintiffs are insistent in their testimony to the effect that the defendant was the 'sole manager in charge,' but it is admitted that the right to hire and discharge all clerk help was reserved, and after a careful analysis of all the evidence, this Court is convinced that this right was exercised by the plaintiffs and that a part, if not all, additional help was selected and hired by these plaintiffs.

"It is testified to by both plaintiffs and defendant that the indebtedness represented by the note herein is the amount that plaintiffs claim the defendant to have been short in his accounts at the Clayton store under the system of accounting above outlined. The item of $1209.24 is claimed by the plaintiffs as the amount defendant was short at the Sicily Island store.

"The evidence does not disclose any contract or special agreement as to the defendant's liability, and these plaintiffs appear to base their claim to right of recovery herein upon their allegations and contention that this defendant was 'sole manager in charge'; that he signed for and accepted all merchandise delivered to his store as 'manager'; and that it was understood that defendant would be liable for the value of all merchandise of the store in his charge. Defendant's testimony is, in substance and to the effect, that he was in charge of this store, in the absence of plaintiffs, as a sort of managing clerk and that all of his acts of management were as directed and ordered by plaintiffs themselves.

"In the opinion of this court, the questions concerning defendant's duties or the position he occupied are not material to the issues. It matters not whether he acted as manager, clerk, or janitor. In either position, he is required to account to these plaintiffs for his administration, but, under no circumstances, could he be held to account for the administration of others, in the ab-

sence of a special agreement or contract to this effect.

"Without considering the method and system of accounting herein used, the fact that the evidence discloses that numerous other clerks and laborers of all kinds were employed by these plaintiffs and, together with these plaintiffs, had access to and clerked in these stores, along with this defendant, precludes the idea of holding the defendant liable. To hold otherwise, would necessarily require the defendant to account for the administration of others along with that of his own. Jolliff v. Chadick-Hayes Company, Inc., 13 La.App. 639, 127 So. 400.

"A preponderance of the evidence is to the effect that no duress or threats of criminal prosecution were deliberately or intentionally used in procuring the execution of the note herein sued upon. However, the conditions and circumstances existing at the time were such that it is difficult to conclude that the act of the defendant was entirely free and voluntary. He had been called into the office and advised that he was 'short in his accounts.' Mr. Shipp, Sr., one of the plaintiffs, testified on cross-examination as follows:

" 'Mr. Cheek wanted to make good as he told me there had never been any stain against his name and he asked me to hold this strictly confidential and give him another chance and he would make a note, which he did.'

"Without doubt, Mr. Shipp here expresses and reflects the true circumstances and conditions existing at the time of this act. Assuming that no intentional threat was made, the words 'short in accounts' are suggestive and sinister in their meaning so much so that this court is convinced that the defendant was actuated solely by a fear of the consequence when he executed this note.

"Having reached the conclusion that the defendant was not indebted under the accounting alleged, and, it being admitted that the note herein was executed in part settlement thereof, and considering the circumstances under which it was executed, it is the conclusion of this court that the note was without consideration and unenforceable as between these parties.

"For the reasons above assigned, it is therefore ordered, adjudged and decreed that plaintiffs' demands be and they are hereby rejected and this suit dismissed at plaintiffs' costs.

"R. R. Reeves, Judge."

And judgment was signed accordingly. From this judgment plaintiffs have perfected this appeal.

The conclusions of the lower court are in our opinion correct. At the time defendant was employed by plaintiffs it was not agreed between them that defendant was to be responsible for any losses in the business. At no time did he have full and complete control and charge of any of plaintiffs' stores. He had practically nothing to do with the hiring of help or the discharging of them. He at all times was required to accept as clerks or as other help whoever plaintiffs sent him or told him to employ. This was demonstrated when he caught a negro employee stealing and discharged him. Soon thereafter defendant was instructed by plaintiffs to re-employ this negro for the reason he would draw a large negro trade, and defendant did re-employ him.

Whenever sales were put on, which the record shows were often, one of the plaintiffs would appear with additional help and actually take charge of this special sale day, often on such occasions sending defendant away from the store to distribute advertisements throughout the country.

The inventories upon which plaintiffs base their claim were made by them and their help, and were completed out of defendant's presence. The only one we find in the record is that taken at the time defendant was discharged or resigned, of date August 16, 1934. It is not shown that defendant ever saw this inventory as filed until the day of trial, or that he ever agreed to its correctness. There is no proof of its correctness by the various parties who assisted in taking it. There is nothing in the record to show the credits given defendant for losses due to perishable goods which did perish before being sold. There is nothing in the record to show that defendant was given any credits for the reduced price of merchandise on sale days. All reductions were made by plaintiffs; all prices at all times being fixed by them.

Our conclusion is that instead of being a manager of a store or stores, he was merely a hired hand at $50 per month, and could do nothing without instructions from plaintiffs.

The claim for shortage in the Sicily Island store account is wholly without merit, under the authority of Jolliff v. Chadick-Hayes Company, Inc., 13 La.App. 639, 127

So. 400, and the only claim of plaintiffs that has any seriousness is made on the note given for the alleged shortage in the Clayton, La., store. The lower court found there was no consideration for this note, and we agree with this conclusion. Without going into detail, as shown by the record, as to how this note was acquired by plaintiff, it is sufficient to say that at the time defendant executed the note, he owed plaintiffs nothing, and, as the record discloses, he was "browbeaten" into signing it to save himself from an unjust and illegal prosecution, as he thought at the time. To hold a note signed under such circumstances this note was signed was a consideration, would be to put a premium on blackmail. Furthermore, it is unreasonable to believe that plaintiffs with their many places of business would keep in their employ in the capacity defendant was employed a man whom they had found stealing from them.

We find no error in the judgment of the lower court and it is affirmed, with costs.